**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                       **Case No. 09-CR-138**

**MICHAEL FEKER**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Pursuant to an agreement with the government, defendant Michael Feker pleaded guilty to filing a false income tax return, 26 U.S.C. § 7206, and structuring deposits to avoid currency transaction reporting, 31 U.S.C. § 5324(a). After accepting the pleas, I ordered a pre-sentence report ("PSR") and scheduled the case for sentencing.

### I. SENTENCING GUIDELINES

The first step in imposing sentence is to calculate the advisory sentencing guideline range. E.g., United States v. Garrett, 528 F.3d 525, 527 (7th Cir. 2008). In this case, the parties agreed to an offense level of 12 under U.S.S.G. § 2T4.1 on the tax fraud count based on a tax loss of $12,500 to $30,000. On the structuring count, the parties agreed to a base offense level of 6 under U.S.S.G. § 2S1.3(b)(3), as the funds involved were the proceeds of lawful activity and were to be used for lawful purposes. Because the two counts were unconnected, the parties agreed that the grouping rules of U.S.S.G. § 3D1.2 did not apply. Thus, applying the multi-count adjustment in § 3D1.4, the adjusted offense level was 13, and following a 2 level reduction for acceptance of responsibility under § 3E1.1, the final level was 11. Coupled with defendant's criminal history category of I, level 11 produces an imprisonment

range of 8-14 months, a Zone C range permitting a so-called "split sentence" of ½ prison and ½ home or community confinement. See U.S.S.G. § 5C1.1(d)(2).

The parties jointly recommended a split sentence of 4 months imprisonment followed by 4 months of home confinement, with defendant reserving the right to argue, based on 18 U.S.C. § 3553(a), that he be allowed to serve his period of imprisonment in a facility other than a federal prison, such as a halfway house or community correctional center ("CCC"). Because the Bureau of Prisons generally does not permit service of prison sentences in a CCC, see 28 C.F.R. § 570.21, defendant suggested a sentence of 1 day in prison, followed by 4 months CCC and 4 months home confinement as conditions of supervised release. Upon review of the factors set forth in 18 U.S.C. § 3553(a), I found such a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing.

## II. SECTION 3553(a)

### A. Sentencing Factors

Section 3553(a) requires the sentencing court to consider:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

2

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the primary purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. While the district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), it must consider the parties' arguments and determine an appropriate sentence "without any thumb on the scale favoring a guideline sentence," United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.  Analysis**

    **1.  Nature of the Offenses**

        **a.  Tax Fraud Count**

Defendant owned and operated restaurants in the Milwaukee, Wisconsin area, and in his tax returns for the years 2001 to 2005, he generally reported either losses or minimal income from his businesses. Following an audit, the government identified substantial cash deposits to his personal bank accounts, but noticed that the cash deposits to his business accounts amounted to less than 5% of overall deposits, which raised red flags. The government also discovered that defendant failed to report consulting payments and commissions from his brother's business as income on his tax returns in 2002, 2003 and 2005.

3

Based on an analysis of the deposits, and eliminating non-taxable sources, the IRS calculated that defendant fraudulently under-reported his income for the years 2001-2003 and 2005 by about $176,648, resulting in an under reporting of taxes for these years in the amount of $21,872. Defendant agreed to a tax loss between $12,500 and $30,000 under the guidelines, although he stated that the money from his brother may have been a non-taxable gift.

### b. Structuring Count

The other count of conviction pertained to defendant's depositing of cash he received from his father to avoid currency transaction reporting requirements, which was unrelated to the tax fraud. As indicated above, the record contained no indication that defendant obtained the cash illegally or intended to use it for unlawful purposes. Nevertheless, his conduct violated Title 31. Defendant agreed to forfeit to the United States the amount involved in the structuring – $37,088. Defendant indicated that he was worried that his father somehow transferred the money out of Iran, his native country, outside the normal banking system and may have violated some rule or regulation, which caused him to deposit the funds in small increments out of concern for his father.

### 2. Character of the Defendant

Defendant was forty-seven years old with no prior record and an otherwise positive background. Born in Iran, he spent much of his childhood in boarding schools in England and Switzerland. His father, a successful businessman, was imprisoned for a time after the overthrow of the Shah in 1979, and his mother died while his father was in jail.

Defendant came to the United States in 1979 to study dentistry but later went into culinary arts. He graduated from the California Culinary Academy in 1986 and owned and

operated restaurants in California and Wisconsin as his vocation since then, becoming a citizen in 2000. Defendant's father came to this country to live with defendant, assisting him financially before his death in 2002.

Married for eight years, defendant had three children with his wife, ages seven, five and three. The oldest had epilepsy, and defendant provided primary care because he too suffered from that condition. Defendant's wife remained supportive and made positive statements about him, indicating that he was devoted to their children. Defendant also presented numerous letters attesting to his positive personal qualities and generous nature. He had been charitable with his money, including sponsoring a family in Mexico through his church, and with his time, including training inmates at the Milwaukee House of Correction, hiring ex-convicts to work in his restaurants, and assisting with the Boys and Girls Clubs. He also helped raise funds for the Hunger Task Force and assisted at a charter school in Milwaukee, providing free meals to low income students.

### 3. The Guidelines and Purposes of Sentencing

As indicated above, the guidelines called for a term of 8-14 months, a Zone C range permitting a split sentence of ½ prison and ½ home or community confinement. The parties jointly recommended such a sentence, with some variation over how the confinement portion would be served. Based on the mitigating aspects of the case, I concluded that a sentence just slightly less than the guidelines' recommendation – a sentence served in the community – would satisfy the purposes of sentencing.

Regarding the structuring count, defendant deposited the money in small amounts out of concern for this father, the source of the funds, and not to hide any wrong-doing himself. As indicated, the funds were lawfully obtained and intended for lawful use. Further, defendant

5

agreed to forfeit the funds involved, about $38,000.

Defendant's tax fraud was undoubtedly serious. Although there was some dispute as to the extent of defendant's under-reporting of income, he agreed that the tax loss to the government exceeded $12,500. Those tempted to under-report and avoid taxes must be deterred, and I had to impose a sentence sufficient to provide just punishment and promote respect for the law. However, prior to sentencing defendant repaid to the IRS the full amount the government claimed was due, even if the funds from his brother were a non-taxable gift, a total of $21,872. He had by all accounts been very cooperative in resolving this matter from the start.

Other factors also warranted sentencing consideration. First, defendant suffered from epilepsy, and his doctor indicated that he had recently started a new treatment regimen, which necessitated frequent visits to measure and monitor his progress. The doctor further indicated that defendant should avoid unnecessary physical or emotional stress, noting that over the past three months defendant had two significant seizures brought about by stress and anxiety. The doctor concluded, based on his experience with the state prison system, that defendant would not receive reasonable treatment outside the epilepsy center.

Second, I considered defendant's role in caring for his children, especially his son Alan, who also had epilepsy. Defendant's other son, Aaron, may also be developing this condition. The children's doctor stated that he relied on defendant's feedback and input relative to diagnostic and management decisions.

Finally, I considered defendant's other positive qualities, including his significant charitable work, discussed above. The guidelines, as I have indicated in other cases, measure only the bad things a defendant has done, not the good. See, e.g., United States v. Ranum,

6

353 F. Supp. 2d 984, 986 (E.D. Wis. 2005).

For all of these reasons, I concluded that confinement in prison was not necessary in this case. I found that confinement in a community correctional center, with permitted release for limited purposes, sufficed to provide just punishment and deterrence. This sentence allowed defendant to continue with his medical treatment, care of his children and operation of his restaurants, while still providing a significant restriction on his liberty. I saw no need to protect the public by placing defendant in prison given his lack of record and other positives characteristics. I also imposed conditions of supervision to ensure financial monitoring. Defendant admitted some past substance abuse, but I saw no current correctional treatment needs.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 1 day, followed by 1 year of supervised release on count one and 2 years on count two, running concurrently. As conditions, I ordered defendant to perform thirty hours of community service work per year; provide access to all financial information requested by the supervising probation officer; cooperate with the IRS and submit all delinquent tax returns and pay all back taxes and interest at the direction of the supervising probation officer; reside in a community correctional center with release for work, medical treatment and child care for a period of 4 months, upon the first available vacancy, observing the rules and regulations of that facility; and, upon completion of the CCC term, comply with the conditions of home confinement for a period of 4 months, with similar release conditions. Based on his financial situation, I determined that defendant had the ability to pay a fine and thus imposed a fine of $2000, the low end of the guideline range. Other terms and conditions of the sentence appear in the

7

judgment.

Dated at Milwaukee, Wisconsin, this 19th day of October, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge